IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

WILLIE B. PENILTON,

   Plaintiff,      No. CIV S-03-1966 GEB KJM P

 vs.

SACRAMENTO COUNTY, et al.,

   Defendants.     <u>FINDINGS & RECOMMENDATIONS</u>

_____/

   Plaintiff is a state prison inmate proceeding pro se with a civil rights action alleging the Sacramento County Sheriff's Department denied him "pro per" privileges when he was housed in Sacramento County Jail awaiting trial and failed to treat his chlamydia and urinary tract infection. Defendant Sacramento County Sheriff's Department has filed a motion for summary judgment.

I. <u>Background</u>

   In his amended complaint, submitted under penalty of perjury, plaintiff alleges that, although he was proceeding in pro per in the criminal trial, his pro se legal mail was mishandled and often returned to him for no apparent reason, his meetings with witnesses occurred in the general visiting area where they were monitored, he was forced to use monitored telephones and make collect calls to contact witnesses, and his legal mail to attorneys was

opened. Am. Compl. at 29-36. He also alleges that when he asked to see medical personnel he was told "if your [sic] not dying you can't be seen," and, as a result, there was a substantial delay in treating him for chlamydia and a urinary tract infection. Id. at 37. The complaint also originally contained a number of allegations against Deputy District Attorney David Steward.

Defendants filed a motion to dismiss for failure to state a claim, which was denied on March 27, 2006. Docket Nos. 39, 53. While this motion was still pending before the district court, plaintiff filed two motions for summary judgment. Docket Nos. 41, 52. These motions were denied on July 24, 2006. Docket Nos. 57, 59.

Thereafter, the defendants filed a motion for summary judgment, challenging only the complaint's allegations against defendant Steward. Docket No. 78. Before and after the filing of this motion, plaintiff filed additional motions for summary judgment. Docket Nos. 72, 73, 83. On May 1, 2008, the district court granted defendant Steward's motion for summary judgment and denied plaintiff's motions. Docket Nos. 111, 118.

The defendant county then sought and was granted permission to file the instant motion for summary judgment.

II. <u>Summary Judgment Standards Under Rule 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
>
> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

<u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a

genuine need for trial.'" Matsushita, 475 U.S. at 587.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

On November 1, 2004, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

III. Pro Se Privileges

In support of the present motion, defendant has provided a copy of plaintiff's verified amended complaint and its many exhibits, relying on it for most of defendant's statement of undisputed facts. Defendant also offers a declaration from Deputy District Attorney David Steward, which was prepared in connection with his own motion for summary judgment, and a declaration from Steven Page. Mem. P. & A. in Supp. Mot. For Summ. J. (MSJ), Exs. A (copy of Amended Complaint), B (Page Decl.) & C (Steward Decl.).

In the amended complaint, plaintiff avers that even though he was representing himself during criminal proceedings in Sacramento County, his pro se mail was opened by

4

correctional officials and sometimes returned to the sender "for no reason." One exhibit to the complaint shows a number of envelopes addressed to plaintiff, which are labeled "pro-per legal use only"; many included the handwritten notation "RTS." Am. Compl., Ex. E. Another exhibit, a response to one of plaintiff's grievances, paraphrases the jail's policy:

> Legal mail may be opened by the officers in your presence to look for contraband and assure that it is legal mail. It may not be read.
> . . .

Id., Ex. H.

Plaintiff also contends he had to use the regular jail telephones for his pro se legal telephone calls even though "every phone in the pod/dayroom/recreation is recorded and monitored" and the officers in the control booth "would simply listen to our calls." Again, the answer to one of his grievances summarized the jail's policy on pro se phone calls:

> Pro per calls may be dialed by the officer for you to assure the receiving party is a part of your casework but they can not listen in and monitor the conversation.

Id. Nevertheless, in his deposition, plaintiff described making most of his pro se calls, particularly those to the victim Naleen Givens, on the pod phones, which were monitored. Deposition of Willie Penilton (Penilton Dep.) at 29:7-8, 10-11. He claimed, "Every time I got on the phone, it was a pro se legal phone call, but they was recording and monitoring them. All of them." Id. at 29:13-15. He conceded that no recorded telephone calls were introduced at this trial and he has no transcripts or tapes of any monitored calls. Id. at 37:15-17, 39:19-21. Plaintiff maintained the calls were monitored, however, because "it states on the phone as you're calling . . . and as you're talking. . . ." Id. at 39:13-24.

Plaintiff was not allowed to interview potential witnesses Naleen Givens and his cousin Patty Barrera in the confidential visiting booths, but instead was forced to use the social visiting area, which, he claims, also is monitored. Am. Compl. at 29-35; Penilton Dep. at

/////

/////

19:9-13, 35:18-24, 37:22-38:4. He attaches to the complaint a memo from the jail's "law library officer" setting out the policy governing pro se inmate visits with prospective witnesses:

> Witness visits shall occur in the social visit booth only. These visits are still considered **confidential** and shall **not** be monitored by officers unless specific articulable facts dictate a risk to jail security. This courtesy will be extended when the visit is designated as a Pro-Per witness visit using the VST-W code and the name of the witness corresponds to the name on the Pro-Per witness list provided.

Am. Compl., Ex. W (emphasis in original).

David Steward, the other declarant on whom defendant relies, was the Deputy District Attorney who prosecuted plaintiff on domestic violence charges. Steward avers he sought but did not receive permission to monitor plaintiff's visits, mail and outgoing telephone calls. Steward Decl. ¶¶ 2-3, 6.

When the nonmoving party bears the ultimate burden of proof at trial on a dispositive issue or may carry its initial burden on summary judgment by doing no more than "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325. As the Court explained in Celotex, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 324. Defendant has relied on this approach here, arguing there is an "absence of evidence" that any interference with plaintiff's pro se privileges, assuming such occurred, was undertaken pursuant to a county policy or had any impact on plaintiff's ability to represent himself at his criminal trial. See MSJ at 10-12.

In Monell v. New York City Dept. Of Social Services, 436 U.S. 658, 694 (1978), the Supreme Court held a municipality was not liable under the civil rights act simply because the agency or municipality employed a person who violated a plaintiff's constitutional rights. The basis for any such claim must be a showing of a governmental policy or custom that was "the moving force" behind the constitutional violation. City of Oklahoma City v. Tuttle, 471

U.S. 808, 820 (1985). The Ninth Circuit has distilled these pleading requirements for a section 1983 action against a municipality: the plaintiff must show he was deprived of a constitutional right, the municipality has a policy, the policy amounts to deliberate indifference to plaintiff's constitutional rights and the policy is the moving force behind the constitutional violation. Oviatt By and Through Waugh v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

A plaintiff may prove the municipality's policy in one of three ways: "(1) by showing 'a longstanding practice or custom which constitutes the standard operating procedure of the local government entity'; (2) 'by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision'; or (3) 'by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.'" Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 964 (9th Cir. 2008). However, a plaintiff cannot prove a municipality's "standard operating procedure" by demonstrating "isolated or sporadic incidents" but rather must show "practices of sufficient duration, frequency and consistency [such] that the conduct has become a traditional method of carrying out its policy." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996). A plaintiff also may attempt to prove a custom or informal policy by showing repeated constitutional violations that did not result in reprimand or discipline for those responsible. Gillette v. Delmore, 979 F.2d 1342, 1349 (9th Cir. 1992).

The only evidence of a formal policy at the Sacramento County Jail regarding pro se inmates demonstrates the following policies existed: that a pro se inmate's legal mail would be opened only in the inmate's presence to check for contraband; that a pro se inmate's calls would be placed by jail personnel, but not monitored; and that a pro se inmate's legal visits with witnesses would be scheduled for the social visiting area but not monitored so long as the visitor was properly identified as a potential witness. Am. Compl., Exs. H and W. Plaintiff has not
/////

shown there is a disputed issue of fact as to the jail's official policy regarding privileges for pro se inmates.

Plaintiff has presented evidence that his pro se mailings were returned to the sender on at least six occasions and frequently was opened before it was given to him. Am. Compl., Ex. E; Opp'n, Declaration of Willie B. Penilton, IV (Penilton Decl.) ¶¶ 12, 15. However, he has presented nothing showing the duration of this alleged informal policy, which destroys any persuasive impact of the evidence: to establish an informal policy, a plaintiff must show a permanent and well-settled practice. Gillette, 979 F.2d at 1349. Accordingly, he has not shown there is a disputed issue of material fact on this issue.

Plaintiff testified that all his telephone calls were pro se calls and all were monitored, which he could determine from the recorded voice announcing the monitoring during the calls. Penilton Dep. at 29:13-15. Once again, he has not suggested this was a well-settled practice or that supervisory officials in the jail were aware of it. Id. at 29:22-30:23.

Finally, plaintiff has asserted his visits with witnesses, conducted in the social visiting area, were recorded. Penilton Decl. ¶¶ 16-17. Once again, he has failed to present any evidence as to the duration of such an alleged practice or the acquiescence of policy-making officials in such a practice.

The defendant is entitled to summary judgment on this issue.

IV. Medical Care

Plaintiff alleges that when he asked to see medical personnel he was told "if your [sic] not dying you can't be seen," and, as a result, there was a substantial delay in treating him for chlamydia and a urinary tract infection. Am. Compl. at 37. He acknowledges that the jail orientation book assured inmates of adequate care and that there was no written policy counseling delay, but claims "they knew about it." Penilton Dep. at 64:12-13, 21-25. He claims that for seven months he was not treated for chlamydia, and for seven weeks he was not treated for a urinary tract infection, even though he repeatedly told medical personnel he was in pain. Id.

1 at 67:22-25 & 68:10-18, 19-25.  He also asserts he filed a grievance about his medical concerns, but does not describe who reviewed it.  Id. at 68:24-25.

Defendant argues plaintiff has not established that the delay was the result of a custom or policy and, to the extent plaintiff is asserting a state law claim of medical malpractice, he has failed to comply with California's Tort Claims Act, which is a precondition to his bringing suit.

Once again, the only evidence of the defendant's medical care policy is plaintiff's description of the orientation handbook as providing that inmates were entitled to constitutionally adequate care.  Id. at 64:12-13.

Although there was significant delay in plaintiff's access to treatment, he does not identify whether it was caused by a single person or more than one.  Compare Henry v. County of Shasta, 132 F.3d 512, 521 (9th Cir. 1997), as amended,137 F.3d 1372 (9th Cir. 1998) (fact that so many officials participated in acts indicative of a policy).  Moreover, although plaintiff claims in conclusory fashion that "they" knew about the delays, he does not identify "them" as policy makers or otherwise suggest that his grievance about the delayed medical care made its way to the department's policy-makers, who thereafter refused to reprimand those responsible for the delay.  See Jett v. Dallas Independent School District, 491 U.S. 701, 737 (1989) (liability lies if a municipality's policy makers have caused the deprivation of rights by acquiescence in a long-standing practice).  Accordingly, plaintiff has not demonstrated the existence of a disputed issue of fact on the question of jail policy regarding medical care.

Finally, to the extent plaintiff raises a state medical malpractice claim, he has not satisfied the prerequisite to maintaining such a suit.  Defendant has submitted the declaration of Steven Page, a Risk and Loss Control Manager for the County of Sacramento, who avers that he searched the county's database for any tort claim filed by Willie Penilton, IV and found none.  Page Decl. ¶¶ 2, 4.  Under California's Tort Claims Act, Cal. Gov't Code §§ 900 et seq., a suit may not be maintained against a public entity unless a claim is presented to the public entity

within six months of the accrual of the claim. Cal. Gov't Code §§ 811.2 (definition of public entity), 911.2 (a). Such a claim is a condition precedent to a state law claim against the jail. State of California v. Superior Court (Bodde), 32 Cal. 4th 1234, 1240 (2004); Karim-Panahi v. Los Angeles Police Deparment, 839 F.2d 621, 627 (9th Cir. 1988). Plaintiff has presented no evidence showing he has satisfied this threshold requirement.

IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment (docket no. 130) be granted and judgment be entered in defendant's favor.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 4, 2009.

_____
U.S. MAGISTRATE JUDGE

2

peni1966.57